# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-13-00604-CV

The Austin Bulldog, Appellant

v.

Lee Leffingwell, Mayor, Chris Riley, Council Member Place 1, Mike Martinez, Mayor Pro Tem, Place 2, Randi Shade, Council Member Place 3, Laura Morrison, Council Member Place 4, Bill Spelman, Council Member Place 5, Sheryl Cole, Council Member Place 6, and the City of Austin, Appellees

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. D-1-GN-11-000639, HONORABLE TIM SULAK, JUDGE PRESIDING

## O P I N I O N

The sole issue in this appeal, and one of first impression for a Texas appellate court, is whether the Public Information Act's exception to disclosure for "an email address of a member of the public"[1] shields from disclosure the personal email address of an elected official when that email address is used to transact official government business. Appellees, the mayor of Austin and various members of the Austin City Council in office during 2011 (collectively, the City Officials), responded to open-records requests from appellant, The Austin Bulldog, by producing the public-information emails requested, but relying on the above-described exception and a letter ruling from the Texas Office of the Attorney General, redacted from those emails their own personal email addresses. The Austin Bulldog sued the City seeking unredacted copies of the emails, but on cross-

_____

[1] Tex. Gov't Code § 552.137(a). The Public Information Act (PIA) is codified in Chapter 552 of the Texas Government Code. *See generally id.* §§ 552.001–.353.

motions for summary judgment, the district court ruled in favor of the City Officials. Based on our conclusion that the redacted email addresses do not fall under the PIA's member-of-the-public email-address exception and, therefore, must be produced as public information, we reverse the district court's summary judgment and render judgment in favor of The Austin Bulldog.

## Background

The facts of this case are undisputed. The Austin Bulldog[2] filed several open-records requests in 2011 requesting, generally, all public information[3] contained in emails between the mayor, council members, and the city manager. The requests were broadly worded to encompass all emails involving City business, whether they were transmitted on City-owned or personal devices and whether using City-assigned or personal email addresses.[4] The City produced some of the requested information immediately, but sought an Attorney General ruling on the documents

---

[2] The Austin Bulldog, which is the assumed name for the Texas nonprofit corporation the Austin Investigative Reporting Project, describes itself as an "independent online news site for investigative reporting in the public interest." *FAQs*, THE AUSTIN BULLDOG, http://www.theaustinbulldog.org (last visited Jan. 15, 2016).

[3] When The Austin Bulldog made its request, the PIA defined public information as "information that is collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business: (1) by a governmental body; or (2) for a governmental body and the governmental body owns the information or has a right of access to it." *See* Act of May 29, 1995, 74th Leg., R.S., ch. 1035, § 2, sec. 552.002, 1995 Tex. Gen. Laws 5127, 5127 (current version at Tex. Gov't Code § 552.002(a)). The Legislature's 2013 amendments to the definition, while significant, are not at issue here. *See* Tex. Gov't Code § 552.002 (defining "public information" as "information that is written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business" by or for a governmental body or "by an individual officer or employee of a governmental body in the officer's or employee's official capacity and the information pertains to official business of the governmental body").

[4] *See Adkisson v. Paxton*, 459 S.W.3d 761, 770–75 (Tex. App.—Austin 2015, no pet.) (holding that official-capacity emails held by government official in his personal email accounts are public information under the PIA).

2

it withheld, asserting that the information was not public information because it did not reference City business.[5] The City produced the withheld information after the Attorney General's office issued a letter opinion advising the City that most of the requested emails were subject to disclosure under the PIA because they "consisted of communications sent to or from the city council members in their capacity as city officials." The City redacted from that information, however, the personal email addresses of the City Officials, citing the letter ruling's instruction that it do so based on PIA section 552.137's exception from disclosure for the "email address of a member of the public" "unless the member of the public consents to its release."[6]

Taking issue with the City's redaction, The Austin Bulldog filed the underlying suit in Travis County District Court seeking declaratory judgment that the personal email addresses of the City Officials in this context were not protected from disclosure under the exception[7] and asking for mandamus relief ordering disclosure of unredacted copies of the emails.[8] The parties filed cross-motions for summary judgment joining issue on the applicability of the member-of-the-public email-address exception, specifically on whether the City Officials are, in this context, "members of

---

[5] *See* Tex. Gov't Code § 552.301(a) (directing governmental body seeking to withhold requested documents to request ruling from Attorney General as to whether documents are subject to PIA exception).

[6] *See id.* § 552.137(a) (exception to disclosure for email address of member of public), (b) (owner must affirmatively consent to release).

[7] *See id.* § 552.3215 (authorizing suit for declaratory or injunctive relief in district court); *see generally id.* §§ 552.321–.327 (provisions regarding civil enforcement of PIA, including venue).

[8] *See id.* § 552.321 (authorizing suit for writ of mandamus).

3

the public." And it is on that same issue that The Austin Bulldog challenges the district court's summary judgment in favor of the City.[9]

## Discussion

We begin with a review of the purposes, goals, and structure of the PIA. The Legislature expressly provides in the PIA that it is the policy of this State that the public have "complete information about the affairs of government and the official acts of public officials and employees."[10] The PIA is aimed at preserving a fundamental tenet of representative democracy—"that the government is the servant and not the master of the people," and reflects the public policy that the people of Texas "remain[] informed so that they may retain control over the instruments they have created."[11] To advance these policy goals, the Legislature has directed that we "liberally construe" the PIA in favor of disclosure of requested information.[12]

---

[9] Because the parties do not dispute the relevant facts, this is a proper case for summary judgment. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000); *see also* Tex. R. Civ. P. 166a (providing that summary judgment is appropriate "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law"). On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *See City of Garland*, 22 S.W.3d at 356 (citing *Guynes v. Galveston Cty.*, 861 S.W.2d 861, 862 (Tex. 1993)). When the trial court grants one motion and denies the other, we should determine all questions presented and render the judgment that the trial court should have rendered. *See id.* (citing *Commissioners Court of Titus Cty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)).

[10] Tex. Gov't Code § 552.001(a); *see Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 293 (Tex. 2011) (discussing policy and purpose of PIA).

[11] Tex. Gov't Code § 552.001(a); *see Jackson*, 351 S.W.3d at 293.

[12] *See* Tex. Gov't Code § 552.001 ("This chapter shall be liberally construed in favor of granting a request for information.").

4

In keeping with these fundamental purposes of promoting transparency in government, the PIA's key provisions require that (1) "[p]ublic information is available to the public at a minimum during the normal business hours of the governmental body";[13] and (2) an "officer for public information of a governmental body shall promptly produce public information . . . on application by any person to the officer."[14] The remaining provisions of the PIA effectuate these mandates by, generally speaking, defining the applicability of the PIA and its various terms as necessary;[15] creating a process for public-information requests, including administrative procedures and judicial review;[16] and specifying limited categories of public information that can or must be excluded from disclosure even if properly requested,[17] in part to protect the personal privacy of individuals.[18] In sum, the PIA generally obligates the government to make public information reasonably available to whomever properly requests it. Only if the requested public information falls under one of the PIA exceptions to disclosure or is made confidential by external law—the government's burden to show[19]—does this obligation change.

---

[13] *Id.* § 552.021.

[14] *Id.* § 552.221.

[15] *See id.* § 552.001–.012 (general provisions).

[16] *See id.* §§ 552.201–.353 (officer for public information, procedures related to access, charges for providing copies, attorney-general decisions, civil enforcement, criminal violations).

[17] *See id.* §§ 552.101–.156 (information excepted from required disclosure).

[18] *See, e.g.*, *City of Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010) (acknowledging PIA's interest in protecting personal privacy of individuals).

[19] *See Adkisson*, 459 S.W.3d at 772 (holding that it is government's burden to show that information it seeks to withhold is either not public information or is subject to an exception (citing *Thomas v. Cornyn*, 71 S.W.3d 473, 480–81, 488 (Tex. App.—Austin 2002, no pet.) (explaining that placement of burden of proof upon governmental body in judicial proceeding is consistent with

As noted, there are no underlying fact issues, and the parties do not dispute that The Austin Bulldog's request was proper and that the requested information is "public information." The only dispute here is whether the PIA's member-of-the-public email-address exception applies to the personal email addresses of the City Officials on the facts before us. Thus, we are presented with matters of statutory construction, which are legal questions.[20] Specifically, whether information is subject to the PIA and whether an exception to disclosure applies to the information are questions of law that we review de novo.[21]

The member-of-the-public email-address exception, originally enacted in 2001 along with a somewhat-related exception for government-collected credit-card and debit-card numbers,[22] makes confidential and excludes from required disclosure "an e-mail address of a member of the public that is provided for the purpose of communicating electronically with a governmental body."[23] We agree with The Austin Bulldog that the email addresses here—i.e., the personal email addresses of City officials used to communicate official City business—do not qualify under the member-of-

---

PIA's strong policy favoring disclosure of public information and PIA's placement of burden on governmental body when seeking open-records determination from attorney general))).

[20] *City of Garland*, 22 S.W.3d at 356 (citing *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989)).

[21] *Id.* (citing *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 676 (Tex. 1995)).

[22] *See* Act of May 14, 2001, 77th Leg., R.S., ch. 356, § 1, 2001 Tex. Gen. Laws 651, 651–52 (current versions codified at Tex. Gov't Code §§ 552.136 (credit-card, debit-card, charge-card, and other access-device numbers), .137.

[23] *Id*. § 552.137(a). The email address may be disclosed "if the member of the public affirmatively consents to its release." *Id.* § 552.137(b). Although not implicated here, the exclusion does not shield email addresses that are, stated generally, provided in connection with securing government contracts or with ongoing government contracts, or public comment in state-licensing matters. *See id.* § 552.137(c).

the-public email exception. Specifically, under a plain-meaning review of the provision and the statute,[24] they do not meet the exception's requirement that the qualifying email address be from a "member of the public."[25]

"Member of the public" is not defined by the PIA, or any other Texas statute as far as we have found, so we look to its plain and common meaning in construing the exception.[26] Simply and broadly, as conveyed by its component words, "member of the public" means a person who belongs to the community or people as a whole.[27] The City Officials urge that this is the phrase's plain and common meaning and, thus, the meaning we should adopt in construing the exception. Therefore, the City Officials assert, because they are each undeniably "a person who

---

[24] *See, e.g.*, *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008) ("In construing statutes, we ascertain and give effect to the Legislature's intent as expressed by the language of the statute. We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired. Otherwise, we construe the statute's words according to their plain and common meaning." (internal citations omitted) (citing Tex. Gov't Code § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004)).

[25] *See* Tex. Gov't Code § 552.137(a) ("Except as otherwise provided by this section, an e-mail address of a *member of the public* that is provided for the purpose of communicating electronically with a governmental body is confidential and not subject to disclosure under this chapter.") (emphasis added).

[26] *See City of Rockwall*, 246 S.W.3d at 625; *Shumake*, 199 S.W.3d at 284.

[27] *See, e.g.*, *The American Heritage Dictionary of the English Language* 1097 (defining "member" as "one that belongs to a group or organization"), 1424 (defining "public" as "the community or people as a whole") (5th ed. 2011); *see also Beeman v. Livingston*, 468 S.W.3d 534, 542 (Tex. 2015 ) (defining "public" as "the community as a whole"); Gerald F. Gaus, *Social Philosophy* 19 (M.E. Sharpe, Inc. 1999) ("Suppose, we could publicly justify a public morality in the following senses: (1) the morality is *public* in that it applies to each and every member of the public; and (2) it is *publicly justified* in the sense that we can show that it is reasonable for each and every member of the public to accept it.").

7

belongs to the community as a whole," they fall under the exception. While we agree that this can be a plain and common meaning of "member of the public," we disagree that it is the plain and common meaning in the context of the email-address exception specifically and the PIA generally. And as the supreme court has emphasized on numerous occasions, context matters.[28]

When "member of the public" is used in conjunction with an identified or identifiable group (or groups)—as it is here with "governmental body"—its meaning is contextually modified to mean a person who does not belong to the identified group. Stated another way, when used in context with another category or group of people, whether specifically identified or simply understood, "member of the public" is a shorthand way to identify someone who does not belong to the other group. This meaning of "member of the public" is best supported (and illustrated) by citing a few of the many examples of its usage in both legal and non-legal contexts.

- *Dow Chemical Company v. U.S.*—In a case involving the constitutionality of the EPA's aerial photography of a chemical-manufacturing facility, the Supreme Court used "members of the public" to describe anyone not employed by or associated with Dow Chemical Corporation. Specifically, after describing the security precautions Dow Chemical had taken at its manufacturing facility, the Court noted, "In addition to these precautions, the open-air plants were placed within the internal portion of the 2,000-acre complex to conceal them from the view of *members of the public* outside the perimeter fence."[29]

---

[28] *See, e.g.*, *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011) ("Language cannot be interpreted apart from context."); *see also Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 572 (Tex. 2014) (Willett, J, concurring) ("Meaning is bound to and bound by context. Words derive substance from the ecosystem of language in which we find them, and we must 'consider the entire text, in view of its structure and of the physical and logical relation of its many parts.'") (citing Antonin Scalia & Bryan A. Garner, *Reading Law* 167 (2012)).

[29] 476 U.S. 227, 241 (1986) (emphasis added); *see PGA Tour, Inc. v. Martin*, 532 U.S. 661, 665 (2001) ("Any member of the public may enter the Q–School by paying a $3,000 entry fee and submitting two letters of reference from, among others, PGA TOUR or NIKE TOUR members."); *see also American Broad. Cos., Inc. v. Aereo, Inc.*, __U.S. __, 134 S. Ct. 2498, 2510 (2014) (in copyright case, distinguishing between "members of public" and owners or possessors of the

8

- *Gannet Company v. DePasquale*—In a case involving the constitutional right to attend criminal trials, the Supreme Court used "members of the public" to distinguish between the participants in a trial—e.g., the judge, attorneys, parties, witnesses, and jury—and everyone else: "The question presented in this case is whether *members of the public* have an independent constitutional right to insist upon access to a pretrial judicial proceeding, even though the accused, the prosecutor, and the trial judge all have agreed to the closure of that proceeding in order to assure a fair trial."[30]

- In a recent *New York Times* article about a donation to Yale University, the author used the phrase "members of the public" to refer everyone who is not an official part of the Yale University community: "Mr. Schwarzman had several discussions with Mr. Salovey, in which they found themselves re-envisioning Commons as a place to unite the various constituencies on campus—undergraduates, graduate and professional students, faculty, staff and alumni, as well as *members of the public*—even as it raised Yale's profile."[31]

In each of the above examples, "members of the public" does not refer to the phrase's broad meaning of "members of the community as a whole." Instead, considering the phrase's use in context—specifically, in connection with another specifically identified group—it is clear that "members of the public" in each of these examples means everyone who is not part of the defined or described group.

Relatedly, and particularly relevant to this case, the phrase "member of the public" is often used to differentiate between ordinary citizens and the government that was created by and is comprised of those citizens. This usage may reflect the distinction between "the people" and the

---

copyrighted work); *Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 284 (1984) (distinguishing between "members of the public" and state legislatures, Congress, public employees, and college instructors).

[30] 443 U.S. 368, 370 (1979) (emphasis added).

[31] Robin Pogrebin, *Schwarzman Gives $150 Million for a Performing Arts Center at Yale*, THE NEW YORK TIMES, May 12, 2015, at C1 (emphasis added).

9

instrument of "government [as their] servant,"[32] but it is more likely simply a result of the phrase being used to distinguish the government and a separate identified group. Regardless, its intended meaning is clear from its use in context, including the following statutory examples from the Texas Legislature:

- Open Meetings Act—"A meeting of a governmental body may be held by videoconference call only if: (1) the governmental body makes available to the public at least one suitable physical space . . . that is equipped with videoconference equipment . . . by which *a member of the public* can provide testimony or otherwise actively participate in the meeting; (2) the member of the governmental body presiding over the meeting is present at that physical space; and (3) any *member of the public* present at that physical space is provided the opportunity to participate in the meeting . . . ."[33]

- Texas Geosciences Practice Act—"Complaints and investigations under this chapter are of two types: (1) complaints received from a *member of the public*; and (2) complaints and investigations that are initiated by the [Texas B]oard [of Professional Geoscientists]. . . . The board by rule shall prioritize complaints and investigations. . . . [W]ith regard to complaints that do not allege an action that may harm the public, a complaint filed by a *member of the public* takes precedence over a complaint initiated by the board."[34]

- Texas Government Code, Ethics—"The [Texas Ethics C]ommission shall remove the home address of a judge or justice from a financial statement filed under this subchapter before: (1) permitting a *member of the public* to view the statement; or (2) providing a copy of the statement to a *member of the public*."[35]

In these examples, "member of the public" plainly refers to any person who does not belong to the agency that is the subject of the provision—i.e., the agency having a meeting under the

---

[32] Tex. Gov't Code § 552.001(a); *see also id.* (noting that "government is the servant and not the master of the people").

[33] *Id.* § 551.127(c) (emphases added).

[34] Tex. Occ. Code § 1002.154 (a-1), (a-2) (emphases added).

[35] Tex. Gov't Code § 572.032(a-1); *see id.* § 572.021 (requiring officers, candidates, and party chairs to file financial statements with Texas Ethics Commission) (emphases added).

Open Meetings Act, the Texas Board of Professional Geoscientists, and the Texas Ethics Commission, respectively. The City Officials' suggested construction here, on the other hand—i.e., that the phrase be read as "a person who is part of the community as a whole" or, in essence, anyone—would render these provisions meaningless, absurd, or both. We must avoid such constructions if possible.[36]

In cases involving law enforcement, the Supreme Court similarly juxtaposes the phrase "members of the public" with "the police" or "police officers" to indicate anyone who is not associated with the police: "[T]he law ordinarily permits police to seek the voluntary cooperation of *members of the public* in the investigation of a crime";[37] and "Any *member of the public* flying in this airspace who glanced down could have seen everything that these [police] officers observed."[38] And the Texas Supreme Court has followed this practice: "Sheriff's Department employees also disclose JIMS information to attorneys and *members of the public* who call in to inquire about pending warrants."[39] Likewise, both the print media and scholarly texts use "member

---

[36] *See, e.g.*, *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous." (citing *City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex. 2006))); *Alejos v. State*, 433 S.W.3d 112, 121 (Tex. App.—Austin 2014, no pet.) (noting "absurd results" concept is "check against blindly narrow and out-of-context readings of statutory language that the Legislature could not possibly have meant" (citing *T.C.R. v. Bell Cty. Dist. Attorney's Office*, 305 S.W.3d 661, 671–72 (Tex. App.—Austin 2009, no pet.); J. Woodfin Jones, *The Absurd–Results Principle of Statutory Construction in Texas*, 15 *Rev. Litig*. 81 (1996))).

[37] *Illinois v. Lidster*, 540 U.S. 419, 425 (2004) (emphasis added).

[38] *California v. Ciraolo*, 476 U.S. 207, 213, 223 (1986) (emphasis added).

[39] *Pruett v. Harris Cty. Bail Bond Bd.*, 249 S.W.3d 447, 450 (Tex. 2008) (emphasis added).

11

of the public" to differentiate between the government and regular citizens, including between the

police and non-police:

- "It all begins in Times Square, where a large duffel bag has been abandoned. Despite all those public service advertisements, it is not a *member of the public* who first becomes alarmed by the unattended package. It's a beat cop . . . ."[40]

- "Despite an objection by [Austin City Council Member Kathy] Tovo, the council allowed only 30 minutes for *members of the public* to speak against the proposal."[41]

- "The IRS handles nearly 160 million tax returns each year and more than 100 million phone calls, interacting with more *members of the public* than any other federal agency."[42]

- "However, during the more than 25 years since the first recognition of the disease, mortality of snow geese has never again been reported by a *member of the public* to a conservation officer in the area . . . ."[43]

- "In England and Wales, a medical practitioner who becomes aware . . . that a patient he or she is attending is suffering from food poisoning, is legally required . . . to notify the . . . appropriate local health authority." . . . . Notification of food poisoning may also be made by a *member of the public*."[44]

Again, it is clear from the context of these examples that "member[s] of the public" refers to anyone

who is not part of the agency or governmental body that is referenced in the example. To read the

---

[40] Neil Genzlinger, *Review: In 'Blindspot,' an Amnesiac's Tattoos Are the Clues,* THE NEW YORK TIMES (Sep. 20, 2015), http://www.nytimes.com/2015/09/21/arts/television/review-in-blindspot-an-amnesiacs-tattoos-are -the-clues.html (emphasis added).

[41] Mary Huber, *Austin City Council unanimously approves urban rail plan*, THE DAILY TEXAN (June 26, 2014), http://www.dailytexanonline.com/2014/06/26/austin-city-council-unanimously-approves-urban-rail-plan (emphasis added).

[42] Lori Montgomery, *IRS Watchdog says customer service will suffer*, THE WASHINGTON POST, Jan. 15, 2015, at A12 (emphasis added).

[43] Gary A. Wobeser, *Essentials of Disease in Wild Animals* (Blackwell Pub. 2006) (emphasis added).

[44] *Microbial Food Poisoning* 139 (Adrian R. Eley ed., 2d ed. 1992) (emphasis added).

phrase as including the people who are part of the agency, which would be the necessary result of the City Officials' suggested construction, would make these examples nonsensical.

In sum, the common and ordinary meaning of the phrase "member of the public" depends, as does the meaning of all words and phrases, on context.[45] Standing alone or without reference to another group, it means a person who belongs to the community as a whole. When used in relation to another group, it means anyone who is not a part of the other group. In the email-address exception, "member of the public" does not stand alone. Its companion is the governmental body to which the email at the heart of the exception was sent: "an e-mail address . . . provided for the purpose of communicating . . . with a governmental body."[46] Accordingly, we hold that "member of the public" in PIA section 552.137 does not include a person who is part of the governmental body that was "communicat[ed] . . . with" by email.

The City's argument that "member of the public" means "any person who belongs to the community as a whole" would shield without distinction every email address provided to a governmental body, rendering the "member of the public" language superfluous and the provision itself meaningless, and we generally try to avoid interpretations that do either.[47] More significantly, however, as we explained above, the common and ordinary usage of this phrase in both legal and non-legal contexts provides a meaning that makes sense and that does not render any aspect of the

---

[45] *See, e.g.*, *TGS-NOPEC*, 340 S.W.3d at 432, 441.

[46] *See* Tex. Gov't Code § 552.137(a) (emphases added). In fact, section 552.137 references "governmental body" eleven times. *See id.* § 552.137.

[47] *See, e.g.*, *Columbia Med. Ctr.*, 271 S.W.3d at 256 ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."); *Alejos*, 433 S.W.3d at 121.

provision useless or superfluous. Finally and also significantly, this interpretation satisfies the PIA's mandate that the public have "*complete* information about the affairs of government and the official acts of public officials and employees,"[48] even where, as here, those officials chose to conduct official government business using private email addresses.

The City also suggests that we defer to the Attorney General's interpretation of this exclusion, citing Government Code section 311.023(b)[49] and PIA section 552.011.[50] The City is correct that we generally give due consideration to Attorney General decisions, although they are not binding, because the Legislature has directed the Attorney General to determine whether records must be disclosed under the PIA.[51] However, we only defer to agency interpretations that do not contradict the plain language of the statute in question and, as explained above, the interpretation offered here contradicts the exception's plain language. Finally, the City Officials maintain that releasing the email addresses here could expose certain City personnel to criminal penalties under PIA section 552.352, which prohibits distribution of "information considered

---

[48] Tex. Gov't Code § 552.001(a) (emphasis added).

[49] *See id.* 311.023(b) (Code Construction Act provision allowing courts to consider administrative construction of statute).

[50] *See id.* 552.011 (instructing Attorney General to maintain uniformity in "application, operation, and interpretation" of PIA).

[51] *See Rainbow Grp. Ltd. v. Texas Emp't Comm'n*, 897 S.W.2d 946, 949 (Tex. App.—Austin 1995, writ denied) ("Although they are not binding on us, this Court gives due consideration to Attorney General decisions, especially in cases involving the [PIA] under which the Attorney General has a mandate to determine the applicability of exceptions to public disclosure." (citing Tex. Gov't Code § 552.301 requiring Attorney General to render decisions regarding PIA)); *see also Abbott v. City of Corpus Christi*, 109 S.W.3d 113, 121 (Tex. App.—Austin 2003, no pet.) (citing *Rainbow Group* for same proposition).

confidential under the [PIA]."[52] However, our holding that the member-of-the-public email-address exception does not apply also means that the email addresses at issue here are not confidential under that exception.[53]

The undisputed summary-judgment evidence before the district court established that the email addresses redacted from the emails at issue here belong to the City Officials and that those emails were communications with the City of Austin from the City Officials in their official capacities. Based on our holding above that "member of the public" in PIA section 552.137 does not include someone who is part of the governmental body with which the email at issue was communicated, the City Officials are not "members of the public" as that phrase is used in PIA section 552.137.[54] Therefore, the City Officials' email addresses are not shielded from disclosure and must be disclosed as public information. Accordingly, The Austin Bulldog, and not the City, is entitled to summary judgment.

We sustain The Austin Bulldog's issue on appeal.

## Conclusion

Having sustained The Austin Bulldog's issue on appeal, we reverse the district court's summary judgment and render judgment in favor of The Austin Bulldog.

---

[52] Tex. Gov't Code § 552.352(a).

[53] *See id.* § 552.137(a).

[54] Because it is not before us on the facts of this case, we do not address whether a member of a governmental body who communicates electronically with that entity outside of his governmental capacity would be part of that entity for purposes of section 552.137.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Reversed and Rendered

Filed:   April 8, 2016