# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-14-00594-CV

**Ken Paxton, Attorney General of the State of Texas, Appellant**

**v.**

**Texas Department of State Health Services, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-GN-12-002322, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## O P I N I O N

The Attorney General appeals from a summary judgment granted to the Texas Department of State Health Services in a declaratory action under the Texas Public Information Act (PIA).[1] The Department sued the Attorney General after his Open Records Division rejected the Department's request to withhold information collected by the Office of the Inspector General (OIG) during an investigation into employee misconduct by two Department employees. The Department had sought to withhold the information under a Government Code provision that makes information and materials "compiled by the [OIG] in connection with an audit or investigation" confidential and not subject to disclosure under the PIA.[2] The Attorney General, noting this provision is found in the OIG's enabling provisions regarding fraud and abuse in the

---

[1] *See generally* Tex. Gov't Code §§ 552.001–.353 (provisions of PIA).

[2] *See* Tex. Gov't Code § 531.1021(g).

provision of health and human services, determined in a letter ruling that the confidentiality exception did not apply because the underlying OIG investigation did not concern "Medicaid or other health and human services fraud, abuse, or overcharges."[3] On cross motions for summary judgment, the district court agreed with the Department's interpretation of the scope of the exception to disclosure created by this statutory grant of confidentiality and granted summary judgment in favor of the Department. Based on our determination that the scope is narrower than that urged by the Department, we will reverse the district court's summary judgment.

## Background

The underlying facts of this case, although vague in the record before us, are straightforward and undisputed. Iris, a Department employee, filed a complaint against Angel, another Department employee. The OIG investigated the complaint but found that the allegations of misconduct against Angel could not be substantiated. Both Iris and Angel filed open-records requests with the Department seeking information and materials from the OIG's investigation.

Believing the information was confidential because it had been "compiled by the [OIG] in connection with an . . . investigation,"[4] the Department declined to release the requested information and instead sought a letter ruling from the Attorney General regarding its obligations

---

[3] Tex. Att'y Gen. OR2012-10072, at 2.

[4] Tex. Gov't Code § 531.1021(g) ("All information and materials subpoenaed or compiled by the [OIG] in connection with an audit or investigation . . . are confidential and not subject to disclosure under [the PIA.]").

under the PIA.[5] The Attorney General's Open Record's Division determined, relevant here, that because the requested information was not "related to Medicaid or other health and human services fraud, abuse, or overcharges," it was not confidential under section 531.1021(g) and, thus, the Department was required to disclose it under the PIA.[6]

Disagreeing with the Attorney General's determination, the Department filed suit in Travis County District Court, seeking declaratory judgment that the requested information was confidential under section 531.1021(g) and relief from compliance with the Attorney General's decision.[7] Both parties then filed cross motions for summary judgment, each agreeing on the following stipulations:

- "The information at issue <u>was not</u> subpoenaed or compiled by the OIG in connection with a Medicaid fraud investigation."

- "The information at issue <u>was</u> subpoenaed or compiled by the OIG in connection with an audit or investigation."

They joined issue, however, on whether section 531.1021(g) makes the information and materials gathered from every OIG audit and investigation confidential, including those not related to Medicaid fraud or other health-and-human-services fraud, or if subsection (g) makes confidential only the information and materials gathered in OIG audits and investigations into Medicaid fraud and other health and human services. The district court impliedly determined that it was the

---

[5] *See id.* § 552.301(a) (PIA provision directing governmental body seeking to withhold information to request Attorney General ruling).

[6] Tex. Att'y Gen. OR2012-10072, at 2.

[7] *See* Tex. Gov't Code § 552.324 (authorizing declaratory-judgment suit).

3

former, declaring "information relating to a specified investigation of alleged misconduct of a named D[epartment] employee is excepted from disclosure under [the PIA] in conjunction with [section] 531.1021, and [the Department] must not disclose this information to the requestors," and granted summary judgment in favor of the Department. The Attorney General appeals.

**Analysis**

The Attorney General's sole issue on appeal is that the district court erred in concluding that the OIG investigatory exclusion to disclosure created by section 531.1021(g) extends to information and materials gathered from an OIG audit and investigation into any subject. Instead, the Attorney General asserts, section 531.1021(g) makes confidential only information and materials gathered by the OIG in an audit or investigation involving "fraud, waste, and abuse in the provision and delivery of all health and human services in the state."[8]  We agree.[9]

We begin our analysis of this issue, as we often do in cases involving the PIA, with a general review of the statute's provisions and policies. Unlike most statutes, the PIA includes explicit rationale and instructions to guide our understanding and construction of it. The PIA emphasizes that it is intended as an expression of a fundamental policy of this State that

---

[8]  *Id.* § 531.102(a) (OIG responsibilities).

[9]  Because summary-judgment standards are well established and not at issue here, we note them briefly for reference. We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). Where both parties move for summary judgment and the district court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

"government is the servant and not the master of the people," and that the people of Texas, "in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know," but "insist on remaining informed so that they may retain control over the instruments they have created," therefore, Texans are entitled "to complete information about the affairs of government and the official acts of public officials and employees."[10] To advance these policy goals, the Legislature has directed that courts "liberally construe" the PIA in favor of disclosing requested information.[11]

In keeping with its fundamental purpose of promoting transparency in government, the PIA's key provisions obligate the government, stated generally, to make public information reasonably available to whomever properly makes a request.[12] Only if the requested public information falls under one of the PIA exceptions to disclosure or if the public information is made confidential by law does this obligation to make public information available change.[13] Here, the Department invoked the confidential-by-law exception, asserting that, under the plain language of Government Code section 531.1021(g), the requested information is excepted from disclosure because "it is information considered to be confidential by law, either constitutional,

---

[10] Tex. Gov't Code § 552.001(a); *see Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 293 (Tex. 2011).

[11] *See* Tex. Gov't Code § 552.001 ("This chapter shall be liberally construed in favor of granting a request for information.").

[12] *See Austin Bulldog v. Leffingwell*, 490 S.W.3d 240, 244–45 (Tex. App.—Austin 2016, no pet.) (describing PIA process).

[13] *Id.*

statutory, or by judicial decision."[14] Resolving this issue, then, presents us with a matter of statutory construction.[15]

As the Texas Supreme Court has emphasized many times, our "primary objective" in statutory construction "is to determine the Legislature's intent which, when possible, we discern from the plain meaning of the words chosen."[16] We must read words and phrases "in context" and construe them "according to the rules of grammar and common usage."[17] "The import of language, plain or not, must be drawn from the surrounding context, particularly when construing everyday words and phrases that are inordinately context-sensitive."[18] "Given the power of context to transform the meaning of language, courts should resist rulings anchored in hyper-technical readings of isolated words or phrases, or forced readings that are exaggerated or, at the other extreme, constrained."[19]

---

[14] Tex. Gov't Code § 552.101.

[15] Statutory construction is a question of law we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

[16] *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747 (Tex. 2012); *see, e.g.*, *Southwest Royalties, Inc. v. Hegar*, __S.W.3d__, No. 14-0743, 2016 WL 3382151, at *3 (Tex. June 17, 2016) ("Our primary objective is to give effect to the Legislature's intent, which we ascertain from the plain meaning of the words used in the statute, if possible."); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent. . . . To discern that intent, we begin with the statute's words.").

[17] Tex. Gov't Code § 311.011(a).

[18] *City of Rockwall v. Hughes*, 246 S.W.3d 621, 632 (Tex. 2008) (Willett, J., dissenting) (citing Tex. Gov't Code § 311.011(a)).

[19] *Id.*

The Department maintains that, on its face, the text of section 531.1021(g) places no limits on or requirements for the subject matter of an OIG audit or investigation to which confidentiality attaches. We cannot disagree that an initial, isolated reading of section 531.1021(g) does suggest that it applies to any audit or investigation by the OIG. But such an interpretation fails when the provision is considered, as it must be, in the context of the OIG's enabling provisions. When considered in its proper context, it becomes apparent that the Legislature intended for confidentiality to extend only to those OIG audits and investigations concerning "fraud, waste, and abuse in the provision and delivery of all health and human services in the state."[20]

The OIG, a division of the Health and Human Services Commission (HHSC), was created to "perform fraud and abuse investigation and enforcement functions as provided by Subchapter C and other law."[21] Subchapter C, titled "Medicaid and Other Health and Human Services Fraud, Abuse, or Overcharges," is directed at, as its title suggests, eliminating fraud and abuse in the provision of Medicaid and other health and human services.[22] For example, one provision authorizes monetary awards for reporting Medicaid fraud and another requires fraud-detection training for contractors and state agencies.[23] Additionally, and significantly, section 531.102 designates the OIG as the entity responsible for carrying out Subchapter C's purposes:

---

[20] Tex. Gov't Code § 531.102(a)

[21] *Id.* § 531.008(c)(2). Although the Department can point to no specific language authorizing such internal investigations of employee misconduct, it asserts that such "other law" exists.

[22] *See id.* §§ 531.101–.1203 (provisions of Subchapter C).

[23] *See id.* §§ 531.101(a) (establishing award), .105 (fraud-detection training).

7

The commission's office of inspector general is responsible for the prevention, detection, audit, inspection, review, and investigation of fraud, waste, and abuse in the provision and delivery of all health and human services in the state, including services through any state-administered health or human services program that is wholly or partly federally funded, and the enforcement of state law relating to the provision of those services.[24]

Section 531.102 instructs the OIG to conduct its investigations independently of HHSC but also to coordinate with the HHSC executive commissioner and HHSC programs in performing "functions relating to the prevention of fraud, waste, and abuse in the delivery of health and human services," and to rely on that coordination to "knowledgeably and effectively perform[] [its] duties under this section and any other law."[25] The OIG's emphasis and goals, according to section 531.102, should be on recovering money, focusing on the strongest cases, and referring Medicaid fraud cases to the Attorney General.[26] And finally, to carry out these responsibilities and goals, Subchapter C authorizes the OIG to issue witness and production subpoenas "in connection with an investigation,"[27] although, as noted and at issue here, "information and materials subpoenaed or compiled by the office in connection with an audit or investigation" are confidential and not subject to disclosure under the PIA.[28]

---

[24] *Id.* § 531.102(a).

[25] *Id.* § 531.102(a-5), (a-6).

[26] *Id.* § 531.102(b).

[27] *Id.* § 531.1021(a).

[28] *Id.* § 531.1021(g).

In sum, the subject matter of Subchapter C—its purpose, essentially, and the context for considering section 531.1021(g)'s grant of confidentiality—is the investigation and prevention of abuse and fraud related to the provision of health and human services. The OIG's statutory responsibility, at least with respect to Subchapter C, is to carry out Subchapter C's purpose by conducting audits and investigations into fraud and abuse in the provision of Medicaid and other health services. For that reason, "audit or investigation" can only be fairly read to refer to an OIG audit or investigation "of fraud or abuse in the provision of health and human services."

This interpretation is supported in a larger context as well. In section 531.008, which directs the HHSC executive director to create the OIG and other divisions of the HHSC, the OIG's purpose is defined in terms of "fraud and abuse investigation," not simply "investigation."[29] When used, as they are here, in the context of health services, the words "fraud" and "abuse" are arguably terms of art intended to refer specifically to Medicaid fraud and related problems.[30] Further, HHSC has defined "abuse" as a "practice by a provider that is inconsistent with sound fiscal, business, or medical practices . . . ."[31] Accordingly, when considered in the context of the OIG's enabling provisions and in light of the aims of those provisions, the subject matter of "audit and investigation" in section 531.1021(g) of Subchapter C is limited to the subject matter of the OIG's

---

[29] *Id.* § 531.008(c)(2).

[30] *See id.* § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").

[31] 1 Tex. Admin. Code § 371.1 (HHSC, Purpose and Scope) (defining "abuse").

9

responsibilities under Subchapter C generally—preventing, detecting, auditing, and investigating "fraud, waste, and abuse in the provision and delivery of all health and human services in the state."[32]

The Department argues that its interpretation does not take the provision out of context. Specifically, it asserts that there is nothing in Subchapter C, including the title, that limits the OIG to Medicaid fraud investigations or to investigations under Subchapter C and that HHSC's executive commissioner, using his discretion under sections 531.0055 and 531.008, has tasked the OIG with investigating employee misconduct at various HHSC agencies for quite some time. To the extent that the Department is suggesting that the OIG is authorized to conduct employee-misconduct investigations that do not implicate fraud and abuse "in the provision and delivery of all health and human services in the state" and that, as a result, those investigations fall under the confidentiality exception in Subchapter C, we would note that the scope of the OIG's investigatory authority, including HHSC's executive commissioner's ability to modify it, is not before us. What is before us is the scope of the confidentiality granted by section 531.1021(g), and we disagree that the Legislature intended the grant to be limitless when the subchapter in which the grant is located is so plainly directed to "fraud, waste, and abuse in the provision and delivery of all health and human services in the state."

The Department also suggests that not protecting all OIG investigations would impair the OIG's ability to obtain sensitive information and carry out its investigative responsibilities, and that persons and companies would feel insecure in reporting to the OIG. With regard to this last assertion, it seems that the Department may be confusing or conflating an OIG investigation

---

[32] Tex. Gov't Code § 531.102(a).

of fraud or abuse in the provision of health and human services with an audit or investigation that does not involve that subject matter. Of course, under our holding here, information collected in an OIG investigation concerning the subject matter of Subchapter C would be confidential under section 531.1021(g) and not subject to disclosure. And the other difficulties described by the Department are no different than those experienced by all other governmental entities faced with public-information requests. The Legislature has determined that, unless the information requested is excepted from disclosure, governmental entities must comply with requests for public information.

The Department argues that its interpretation would not deny the public access to any information because the OIG would be required to issue a final report under section 531.102(k). The Department is incorrect. Section 531.102(k) requires final reports only for "each audit or investigation *conducted under this section*."[33] An audit or investigation conducted under section 531.102 is, as described above, one involving "fraud, waste, and abuse in the provision and delivery of all health and human services in the state."[34] Thus, if we accept the Department's interpretation of section 531.1021(g), the only public information from OIG investigations that would be subject to disclosure would be the final reports of investigations concerning "fraud, waste, and abuse in the provision and delivery of all health and human services in the state," while all other public information collected by the OIG would remain hidden. This is something allowed by no other agency and, more importantly, is contrary to the spirit of the PIA.

---

[33] *Id.* § 531.102(j)

[34] *Id.* § 531.102(a).

11

As a final point, the Department points out that previous Attorney General letter rulings construed section 531.1021(g) to grant confidentiality to all OIG audits and investigations regardless of the subject matter. The Department insists that we must presume that the Legislature was aware of and adopted these letter rulings because the Legislature has amended section 531.1021(g) several times since 2003.[35] In response, the Attorney General concedes that he has applied this section differently in the past but maintains that his position since 2012 has been that section 531.1021(g) does not apply when the underlying OIG investigation "is not related to Medicaid or other health and human services fraud, abuse, or overcharges."[36] Accordingly, the Attorney General emphasizes, the Legislature has had the opportunity to change the law. We simply note the aid to statutory construction on which the Department relies here presumes an underlying statute that is ambiguous.[37] Section 531.1021(g), as we have explained, is susceptible to only one reasonable interpretation.[38]

---

[35] *See Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004) ("If an ambiguous statute that has been interpreted by a court of last resort or given a longstanding construction by a proper administrative officer is re-enacted without substantial change, the Legislature is presumed to have been familiar with that interpretation and to have adopted it.").

[36] *See, e.g.*, Tex. Att'y Gen. OR2012-10072; OR2012-19674; OR2013-02357; OR2013-02732; OR2013-04545; OR2013-05224; OR2013-06264; OR2013-08066; OR2013-11552; OR2013-12119; OR2013-14973; OR2014-06063; OR2014-07711; OR2014-13108; OR2014-15004.

[37] *See Mega Child Care, Inc.*, 145 S.W.3d at 176 ("If an *ambiguous* statute . . . .") (emphasis added).

[38] *See, e.g.*, *Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 375 S.W.3d 464, 475 (Tex. App.—Austin 2012, pet. denied) (noting "ambiguous" means "susceptible to more than one reasonable interpretation").

We hold that, with respect to the OIG, the confidentiality created by section 531.1021(g) is limited to audits and investigations concerning "fraud, waste, and abuse in the provision and delivery of all health and human services in the state."

We sustain the Attorney General's issue.

## Conclusion

We reverse the district court's judgment and render judgment that the public information at issue in this case is not confidential under Government Code Section 531.1021.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Reversed and Rendered

Filed:   August 31, 2016