**Opinion filed March 16, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00052-CV
_____

## AIM MEDIA TEXAS, LLC D/B/A *THE ODESSA AMERICAN*, Appellant

## V.

## CITY OF ODESSA, TEXAS, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-20-02-0127-CV**

## D I S S E N T I N G   O P I N I O N

I respectfully dissent.  "[O]ur Constitution requires vigilance lest courts overstep their jurisdictional bounds, [but] courts also must dutifully exercise jurisdiction rightly theirs."  *Matthews, ex rel. M.M. v. Kountze Ind. Sch. Dist.*, 484 S.W.3d 416, 426 (Tex. 2016) (Guzman, J., concurring) (citing *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 144 (Tex. 2012)).

The majority affirms the trial court's order on the grounds that the Texas Public Information Act (TPIA) does not waive sovereign immunity for mandamus relating to the lack of promptness in providing public information. I disagree, and would further hold that the issue is not moot since Appellee has not, among other things, met its "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). On that basis, I would reverse and remand.

In voicing my dissent, I join with Chief Justice Yvonne T. Rodriguez of the Eighth Court of Appeals in *City of Georgetown v. Putnam*, 646 S.W.3d 61, 81 (Tex. App.—El Paso 2022, pet. denied) (concurring opinion), when she expressed concern regarding the chilling effect of a similar ruling on the rights of citizens to obtain public information, but particularly, immediate "basic information" from news sources. I limit my opinion to the duty of providing to the public "basic information,"[1] which has become a term of art originating from the holding in *Houston Chronicle Publishing Co. v. City of Houston*, 531 S.W.2d 177, 186–87 (Tex. App.—Houston [14th Dist.] 1975), *writ ref'd* n.r.e., 536 S.W.2d 559 (Tex. 1976) (per curiam), hereinafter referred to as *Houston Chronicle I*.

*Timeliness and "Basic Information"*

Appellant has challenged the constitutionality of Appellee's delay in providing basic information based on *Houston Chronicle I*. The majority acknowledges this argument in its opinion. To fully appreciate the issue that is at stake, it is significant that in *Houston Chronicle I*, the court declared the existence of a "constitutional right of access" of "the press and the public . . . to information concerning crime in the

---

[1]Under Texas law, "basic information" concerning a crime includes the offense committed, location of the crime, identification and description of the complainant, the premises involved, the time of the occurrence, property involved, vehicles involved, description of the weather, a detailed description of the offense in question, and the names of the investigating officers. *Houston Chronicle I*, 531 S.W.2d at 187; *see also* TEX. GOV'T CODE ANN. § 552.108(c) (West 2020).

community, and to information relating to activities of law enforcement agencies" that was grounded in public concerns with both "ever increasing criminal activity, violence, and unsafe streets" and "the creation of a police state." 531 S.W.2d at 186.[2] The question at issue is not only whether Appellant should be given information that will further Appellant's operations and profitability, but whether the community as a whole is given ready access to information that is necessary to maintain its safety and security and to hold law enforcement accountable for its activities.

Appellant's pleadings are not merely directed at Appellee's failure to produce basic information regarding local crime, but rather its regular failure to *timely* produce such information. Indeed, the record documents hundreds of requests to the City of Odessa for information with delayed responses of weeks and months.[3]

In her affidavit, Laura Dennis, editor of the Odessa American (OA) for fifteen years, stated that the OA "relies on the prompt production of public information to provide the public with news." Urgency to access is involved. News media is dependent on its ability to promptly relay current information; it relies on access to public *news*—not *olds*. It would be impossible for Appellant, much less members of

---

[2]"This constitutional right of access to information should not extend to such matters as a synopsis of a purported confession, officers' speculations of a suspect's guilt, officers' views as to the credibility of witnesses, statements by informants, ballistics reports, fingerprint comparisons, or blood and other laboratory tests." *Houston Chronicle I*, 531 S.W.2d at 187. Further, if the public information is made "confidential by law, either constitutional, statutory, or by judicial decision," the governmental body can avoid disclosure. *See* GOV'T § 552.101. For example, to the extent that current Texas law makes confidential the names of juveniles or victims of certain crimes, the *Houston Chronicle I* definition of "basic information" would be modified with regard to those protected names. *See* TEX. CODE CRIM. PROC. ANN. ch. 58 (West Supp. 2022) (Confidentiality of Identifying Information and Medical Records of Certain Crime Victims).

[3]The record contains a ledger of 59 Odessa American (OA) requests regarding 67 arrestees and the City's delays—many appearing to be for weeks or months. Attached to the affidavit of Jennifer Reynor, which accompanies the City's second plea to the jurisdiction, are 170 pages of authenticated business records of the City. The exhibits to Reynor's affidavit document over 550 requests from the Odessa American, [particularly] with a letter of explanation and reference numbers appearing to include the date of each request—documenting delays—and the scheduled completion date with work notes following (some with completion dates). *See also infra* note 12 (addressing seven specific *examples* of the types of statutory violations alleged). During oral argument, the City did not deny that since 2019 it had made over 700 requests for an Attorney General opinion. These constitute some evidence of a pattern of the failure to immediately provide basic information upon request.

the public that rely on this news service, to pursue a mandamus for every one of the TPIA requests found in this record where promptness may have been at issue. By the time it was received it would be cost prohibitive and no longer news.

In keeping with its fundamental purpose of promoting transparency in government, the TPIA's key provisions obligate the government, stated generally, to make public information reasonably available to whoever properly makes a request. *See Austin Bulldog v. Leffingwell*, 490 S.W.3d 240, 244–45 (Tex. App.—Austin 2016, no pet.) (describing the TPIA process). Only if the requested public information falls under one of the TPIA's specific exceptions[4] can the governmental body avoid disclosure. *Id.*

As opposed to "complete information," Appellant argues that "basic information" as it relates to public information of criminal activity is a separately identifiable and protected category of public information. In its briefing and in oral argument before this court, Appellant limited its petition for writ of mandamus to that information within the definition of "basic information" found in *Houston Chronicle I.* Significantly, the right of the public to "basic information" is also specifically distinguished in the TPIA by the legislature as set out in Section 552.108(c). Appellant argues that basic information was a separately defined category of priority and analysis in the landmark case of *Houston Chronicle I. See City of Carrollton v. Paxton*, 490 S.W.3d 187, 197 (Tex. App.—Austin 2016, pet. denied) (selectively analyzing the statute). *Houston Chronicle I* held that basic information (as defined) should be provided "immediately" to the public, including news sources of the community. *Houston Chronicle I*, 531 S.W.2d at 187. Countless opinions from the Texas Attorney

---

[4]The TPIA provides explicit exceptions to the disclosure requirement. *See, e.g.*, GOV'T §§ 552.026–.028, 552.101–.162 (West 2020 & Supp. 2022). Some of the exceptions apply to certain types of information, while others except disclosure of information to certain categories of requestors. (Compare *id.* § 552.114 (excepting from disclosure certain confidential information found within student records), with *id.* § 552.028 (excepting from mandatory disclosure all types of information when the request comes from an incarcerated individual)). "The legislature, in its considered judgment, has excepted from disclosure more than sixty categories of information . . . ." *Paxton v. City of Dallas*, 509 S.W.3d 247, 250 (Tex. 2017).

General's Office regarding the TPIA likewise treat "basic information" *separately*, and the Attorney General has repeatedly admonished Appellee,[5] and other cities, to provide that information as defined in *Houston Chronical I* without the delay inherent in requesting an opinion from the Attorney General's Office.

*Houston Chronicle I* clearly found not only a statutory right to basic information, but also "a constitutionally protected right of the press and [the] public"[6] to basic information. 531 S.W.2d at 186. And it held that the basic information "as described herein should be made *immediately* available." *Id.* at 187 (emphasis added). While other Texas cases may have construed the TPIA statute, none squarely address the constitutional rights implicated by *Houston Chronicle I.* In its Second Amended Petition for Writ of Mandamus, and in its appellate briefing, Appellant argues a *constitutional* right of the public and the press to the promptness of public information that it seeks here. At no time has Appellee responded to these constitutional bases, rather it strictly limits its arguments to the TPIA statute.[7]

### The City's Justification for Delay

The City relies upon the statutory law-enforcement-agency exception found in Section 552.108. Generally, it excepts from disclosure information held by a law enforcement agency, the disclosure of which would interfere with the detection,

---

[5]*See, e.g.*, Tex. Att'y Gen. OR2020-22528 (ruling that the City of Odessa must not withhold basic information).

[6]Access to basic information remains both a statutory and constitutional right. In declining to hear *Houston Chronicle I*, the Texas Supreme Court reserved "the question as to whether the press and public have a statutory or constitutional right to obtain all of the information which the court of civil appeals has held to be public information." 536 S.W.2d at 561. Likewise, the Texas Supreme Court has never endorsed or overruled *Houston Chronicle I.* However, in a subsequent case it did use the phrase "basic information concerning a crime" as a shorthand descriptor for the types of information that the Fourteenth Court held to be public in *Houston Chronicle I.* That case was *Ex parte Pruitt*, which involved claims of public access to certain records from fire investigations. 551 S.W.2d 706, 709–10 (Tex. 1977) ("In the Houston Chronicle case the court of civil appeals held that the public has the right of access to the basic information concerning a crime, such as the offense committed, the location of the crime, the identification of the complainant, the premises involved, the time of the occurrence, the property involved, vehicles involved, a detailed description of the offense in question and the names of investigating officers.").

[7]In an exhibit attached to its second plea to the jurisdiction, the City stated its position that the *Houston Chronicle I* case is *not* the law in Texas.

5

investigation, or prosecution of a crime. Malicious intent must not be ascribed to Appellee, nor motives contrary to the principles of freedom of the press or the public's right to know. Appellee's competing legitimate interests are clear and important. "The City and State have a legitimate interest in preserving the secrecy of their records from the eyes of defendants and their counsel in criminal actions." *Houston Chronicle I*, 531 S.W.2d at 186. "The State has a legitimate interest in preventing excess publicity which might lead to a denial of due process and endanger the prosecution." *Id.* (citing *Sheppard v. Maxwell*, 384 U.S. 333 (1966)). "To open [other sensitive] material to the press and public in all cases might endanger the position of the State in criminal prosecutions by the use of such materials to the disadvantage of the prosecution. To have such material open to the press and public in all cases might reveal the names of informants and pose the threat of intimidation of potential prosecution witnesses." *Id.* at 187. In *Cox Texas Newspapers*, the Texas Supreme Court recognized a common law right to withhold information from TPIA disclosure where "disclosure would create a substantial threat of physical harm." *Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 118 (Tex. 2011). While secondary to the parties competing interests, "[t]he expense and manpower necessary for the maintenance of appropriate records available to the press and public [is] a factor that should be considered." *Houston Chronicle I*, 531 S.W.2d at 186. But paragraph (c) of the statutory law enforcement agency exception defines, as *outside of that exception*, "basic information about an arrested person, an arrest, or a crime." In doing so, Section 552.108 creates and recognizes a separate *unprotected* category of public information that otherwise might be withheld under the law-enforcement-agency exception.

> (c) This section does not except from the requirements of Section 552.021 [i.e., TPIA mandatory disclosure] information that is **basic information about an arrested person, an arrest, or a crime**.

GOV'T § 552.108(c) (emphasis added). The statute's use of the phrase "basic information" is not coincidental since its use of "basic information" is derived from the

analysis in *Houston Chronicle I*. *See City of Carrollton*, 490 S.W.3d at 197 (analyzing the statute and specifically Section 552.108(c) as to basic information).[8]

The requirement in Section 552.221(a) that information be provided "promptly" under the circumstances must be consistently harmonized into the statute's construction.[9] But it is not insignificant that, as related to the separate category of "basic information," the *Houston Chronicle I* holding was that it be provided "immediately." Basic information should not get confused or lost in the blur of other various and sundry types of TPIA requests that Appellee may receive. The items set out in the definition of basic information are the simple essentials of information to which the public is entitled with regard to all crimes and arrests, with few exceptions. The amicus brief of the Dallas Morning News, Inc., et al, points out that the legislature anticipated that it could be as simple as creating and referring a requestor like Appellant to an exact location "on a website maintained by the governmental body and accessible to the public if the requested information is identifiable and readily available on that website." TEX. GOV'T CODE § 552.221(b-1), (b-2). As long as there is crime and law

---

[8]In *City of Carrollton*, our sister court construed Section 552.108(c) excluding from the law enforcement exception "basic information about an arrested person, an arrest, or a crime." 490 S.W.3d at 197. There was no dispute that "the Legislature's use of 'basic information' . . . evokes a concept that originated in [the] 1975 [*Houston Chronicle I*] decision." *Id*. With regard to the City of Carrollton's computer-aided dispatch system (CAD) notes and the extent to which Section 552.108(c) required production of same, those facts differ and that legal issue is not squarely before us.

[9]In *Fort Worth Transportation Authority v. Rodriguez*, 547 S.W.3d 830, 838–39 (Tex. 2018), the court stated:

> When interpreting each provision, we must consider the statutory scheme as a whole. *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008) ("[W]hen interpreting [a specific statute], we must consider its role in the broader statutory scheme."); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). Looking to the statutory scheme, we strive to give the provision a meaning that is in harmony with other related statutes. *See City of Dall. v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010); *see also La Sara Grain Co. v. First Nat. Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex. 1984) ("Generally, courts are to construe statutes so as to harmonize [them] with other relevant laws, if possible.") (citing *State v. Standard Oil Co.*, 130 Tex. 313, 107 S.W.2d 550 (1937)). "Put differently, our objective is not to take definitions and mechanically tack them together . . . [;] rather, we consider the context and framework of the entire statute and meld its words into a cohesive reflection of legislative intent." *Cadena Com. USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2017). Therefore, our analysis seeks to harmonize the two statutes at issue in this case, giving effect to both within the context of the TTCA and reflecting legislative intent.

enforcement, there will be a need to systematically and consistently capture basic information to be provided to the press facilitating information to the public. The right of the public to be informed and the First Amendment right to publish are inextricably tied to the right to access. Without access to information there could be no meaningful publication, and without publication there is little ability of the public to be informed. "[E]ach person is entitled . . . at all times to complete information." GOV'T § 552.001(a).

In its second amended answer, Appellee pleads that as a matter of course, the TPIA gives it ten to fifteen business days to release public information about crimes and arrests to the public and to the press. No Texas court has ever adopted this view with regard to basic information. Appellee maintains that, under the law enforcement exception, it is entitled to wait ten days and then seek an Attorney General opinion before it must disclose requested basic information. However, the cases that Appellee cites in support of its position are distinguishable from this one. Most importantly, Appellee's cases do not involve requests for basic information, and/or they do not involve a pattern of delay in complying with disclosure of requested basic information as required under the TPIA.[10]

Section 552.221(d) does not entitle a governmental body to withhold for ten business days "basic information" that is not covered by an exception from

---

[10]*Hernandez* did not involve a refusal to timely release basic information about crimes or arrests. *See Univ. of Tex. Rio Grande Valley v. Hernandez*, No. 13-19-00180-CV, 2021 WL 375429 (Tex. App.—Corpus Christi–Edinburg Feb. 4, 2021, no pet.) (mem. op.). *Dallas Morning News* did not involve a refusal to timely release basic information about crimes or arrests. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351 (Tex. 2000). *City of El Paso* did not involve a refusal to timely release basic information about crimes or arrests. *See City of El Paso v. Abbott*, 444 S.W.3d 315 (Tex. App.—Austin 2014, no pet.). *Giggleman* did not involve a refusal to timely release basic information about crimes or arrests. *See Tex. State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, (Tex. App.—Austin 2013, no pet.). *Nehls* involved an isolated failure to release basic information, and the court specifically noted that there was no evidence of a policy or practice of routinely withholding discoverable public information such that it was a "recurring problem." *See Nehls v. Hartman Newspapers, LP*, 522 S.W.3d 23, 33 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). *Cf. Click v. Tyra*, 867 S.W.2d 406, 408 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding) (evidence of a "recurring problem").

disclosure, as Appellee mistakenly argued in this matter. *See* Tex. Att'y Gen. Op. ORD 664 (a governmental body must release public information promptly and is not entitled to withhold for ten days public information not excepted from disclosure); *see also City of Houston v. Houston Chron. Publ'g Co.*, 673 S.W.2d 316, 318 (Tex. App.—Houston [1st Dist.] 1984, no writ). And even if such delay were permitted under the statute, it is not permitted under the constitution, per *Houston Chronicle I*. The public is entitled to basic information immediately. The categories of information constituting basic information in *Houston Chronicle I* are not confusing or complicated. Only in the most unusual circumstance of a "compelling reason"[11] should such information be delayed, and in that event, the burden should remain upon the governmental entity to prove that the particular information withheld does not otherwise fall under the definition of "basic information" and should be protected. *See* GOV'T § 552.303; *see also City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 585 (Tex. 2018).

*Construction in Favor of Granting a Request for Information*

Following the opinions in *Gates* and *Putnam*, the majority has determined that the TPIA does not provide a waiver with respect to mandamus actions relating to delays in producing documents. I respectfully disagree.

The TPIA "forcefully articulates a policy of open government." *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 675 (Tex. 1995) (emphasis removed); *see also Envoy Med. Sys., L.L.C. v. State*, 108 S.W.3d 333, 336 (Tex. App.—Austin 2003, no pet.) (quoting *Sharp*). Indeed, the TPIA leaves little doubt of its legislative intent. Section 552.001, entitled "Policy; Construction," provides as follows:

> (a) Under the fundamental philosophy of the American constitutional form of representative government that adheres to the

---

[11]For example, in *Cox Texas Newspapers*, the Texas Supreme Court first recognized a common law right to withhold information from TPIA disclosure where "disclosure would create a substantial threat of physical harm." 343 S.W.3d at 118 (citing GOV'T § 552.151).

principle that government is the servant and not the master of the people, it is the policy of this state that each person is entitled, unless otherwise expressly provided by law, ***at all times*** to ***complete information*** about the affairs of government and the official acts of public officials and employees. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created. ***The provisions of this chapter shall be liberally construed to implement this policy.***

(b) ***This chapter shall be liberally construed in favor of granting a request for information.***

Gov't at § 552.001 (emphasis added). Accordingly, the TPIA mandates a liberal construction of the Act in favor of granting a request and requires that exceptions to disclosure be construed narrowly. *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future and Clean Water*, 336 S.W.3d 619, 626–29, 634 (Tex. 2011) (the court referenced the legislature's "policy and purpose" as stated in Section 27.003 of the Texas Water Code when it construed the Injection Well Act's use of "'public interest' in section 27.051(b)(1))"; *see also City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 364 (Tex. 2000); *Simmons v. Kuzmich*, 166 S.W.3d 342, 346 (Tex. App.—Fort Worth, May 19, 2005, no pet.); *Envoy*, 108 S.W.3d at 336; *City of San Antonio v. San Antonio Express–News*, 47 S.W.3d 556, 561–62 (Tex. App.—San Antonio 2000, pet. denied).

*"Promptly"— Not Construing Individual Provisions in Isolation*

"In construing a statute, our objective is to determine and give effect to the Legislature's intent." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003) (citing *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002)); *see also* Gov't § 312.005; *Am. Home Prods. Corp. v. Clark*, 38 S.W.3d 92, 95 (Tex. 2000). Examining the legislature's intent as expressed in the statutory language, we apply the plain meaning of the text unless a different meaning is supplied by legislative

definition or is apparent from the context or the plain meaning leads to absurd results. *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 572 (Tex. 2016). We must avoid construing individual provisions in a statute in isolation from the statute as a whole. *R.R. Comm'n of Tex.*, 336 S.W.3d at 628–29 (the court, in "avoid[ing] construing individual provisions of a statute in isolation from the statute as a whole" compared different sections of the Injection Well Act to determine the scope of the phrase in the "public interest"); *see also City of San Antonio*, 111 S.W.3d at 25 ("[W]e 'read the statute as a whole and interpret it to give effect to every part.'" (quoting *Gonzalez*, 82 S.W.3d at 327, and *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998) (per curiam))). Individual provisions are examined in the broader statutory scheme and its construction must be consistent with its underlying purpose and the policies it promotes. *Nw. Nat'l Cnty. Mut. Ins. Co. v. Rodriguez*, 18 S.W.3d 718, 721 (Tex. App.—San Antonio 2000, pet. denied). Statutes should be read "contextually to give effect to every word, clause, and sentence" and "strive to give the provision a meaning that is in harmony with other related statutes." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018); *see also Texas State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 41 (Tex. 2017). "We must not interpret the statute 'in a manner that renders any part of the statute meaningless or superfluous.'" *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014) (quoting *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008)); *see Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010) ("We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind."). In the present case, this includes the words "basic information" and "promptly."

Adhering to these construction principles, focus should be directed to Appellant's petition for writ of mandamus under Section 552.321(c). Under this

11

section, the TPIA specifically provides for civil enforcement by mandamus should governmental entities fail to provide requested public information. Appellant claims that it has a right of civil enforcement by mandamus to compel Appellee to provide basic information immediately, a practice that Appellee had maintained without any apparent difficulty prior to 2019.[12] To the contrary, as shown above, the City pleads that as a matter of course, the TPIA gives it ten to fifteen days to release public information about crimes and arrests to the public and to the press. The City further argues that since, ultimately, it did provide the documents of basic information requested by Appellant, no mandamus avenue seeking civil enforcement is now available. The viability of Appellant's request for a writ of mandamus under the TPIA (but not constitutionally) is tied to the construction of Section 552.321(a). In relevant part, it provides:

> (a) **A requestor . . . may file suit for a writ of mandamus compelling a governmental body to make information available for**

---

[12]In Appellant's second amended petition for writ of mandamus, seven instances of delay and redactions were specifically pled as "*examples*" of the type of basic information being withheld by Appellee. Appellee later stipulated to each of these examples in writing. Example 1: The prime factual example of the City's failure to promptly release public crime information is the Odessa mass shooting on August 31, 2019—production of documents were delayed about five months. Example 2: In the case of Fabian Polvan, who was arrested and charged with capital murder of multiple persons, where there was a three month delay. Example 3: Case Report for the arrest of Lillie Phergson on January 2, 2020, included unlawful redactions of basic information relating to the arrest, including the complainant's name, the premises involved, and a detailed description of the offense in question. Example 4: The Probable Cause statement for the arrest of Abel Carrasco on December 21, 2019, included unlawful redactions of basic information, including the complainant's name, the premises involved, and a detailed description of the offense in question. Example 5: Delay of the release of basic public information is reflected in a letter ruling by the Office of the Attorney General (OAG), Tex. Att'y Gen. OR2020-19328. that the City had improperly redacted basic public information: "Upon review, we find you have failed to demonstrate the basic information is highly intimate or embarrassing and not of legitimate public concern. Therefore, the city may not withhold the basic information under section 552.101 on that basis." Example 6: The City again "failed to demonstrate the basic information is highly intimate or embarrassing and not of legitimate public concern. Therefore, the city may not withhold the basic information under section 552.101 on that basis." Tex. Att'y Gen. OR2020-22528. Example 7: On June 25, 2021, Appellant submitted a request for public information, including a copy of the police report and probable cause affidavit for Roberto Serrano Franco, after he was charged with four counts of aggravated assault against a public servant, two counts of aggravated assault with a deadly weapon, accident involving injury, and evading arrest or detention with a vehicle. On June 29, the documents were released but with improper redactions of the identities of the arresting officers.

**public inspection if the governmental body** refuses to request an attorney general's decision as provided by Subchapter G **or refuses to supply public information** or information that the attorney general has determined is public information that is not excepted from disclosure under Subchapter C.

GOV'T § 552.321(a) (emphasis added) (footnotes omitted).

Appellee argues that once the information has been provided, paragraph (a) is not applicable. Similarly, the majority finds that there is no remedy thereunder for a failure to provide the public information *promptly*, as is the essence of Appellant's petition for mandamus. But the construction principles stated above mandate that Section 552.321 be read in harmony with other TPIA sections. Under TPIA Subchapter E, Procedures Related to Access, Section 552.221(a) states that a governmental body "shall promptly produce" public information after receiving a request for disclosure, meaning "as soon as possible under the circumstances, that is, within a reasonable time, without delay." GOV'T § 552.221(a). There can be no legitimate argument that Section 552.321(a) somehow does not govern access in all TPIA requests, and there is no basis to conclude that it does not equally apply to a refusal to supply public information under Section 552.321. Appellant's argument is that *for basic information*, "as soon as possible under the circumstances, that is, within a reasonable time, without delay" is what *Houston Chronicle I* determined to be "immediately."

"*Under the circumstances*" would include the category of public information requested here—"basic information," a narrow category of information. The *circumstances* include landmark case law, like *Houston Chronicle I*, that for forty-five years has held that basic information must be provided to the requestor immediately. The *circumstances* include the statute's exclusion of basic information from the law enforcement exception per Section 552.108(c). The *circumstances* include Attorney General opinions, which have continually advised Appellee that it

cannot withhold basic information. The *circumstances* include Appellee's ability to provide basic information immediately or within a few hours as demonstrated by its previous regular compliance for similar requests in 2019.[13] The *circumstances* include the TPIA's central purpose and overarching legislative mandate to construe the statute's provisions "in favor of granting a request for information."[14] GOV'T § 552.001(b). But also *that we do so in a way which ensures the public is receiving* "*at all times . . . complete information.*" GOV'T § 552.001(a) (emphasis added). Compelling the prompt production of basic information furthers the important constitutional protections as set forth in *Houston Chronicle I*.

Without a civil enforcement mechanism to address a pattern of untimely production of information, Section 552.221(a) and *Houston Chronicle I* are rendered ineffectual, leading to an absurd result where governmental agencies can delay production of time-critical documents at will, and then evade accountability and appellate review by belatedly providing them while arguing that the issue is moot. The rights that are implicated in *Houston Chronicle I* and the TPIA require enforcement. We should not construe the statute in a way that permits stonewalling of basic information and requires repetitive lawsuits to obtain redress. Such a construction is not consistent with the legislature's intent or the constitutional rights of the public and the press.

---

[13]Appellee has not argued, nor provided evidence, that, if required, it would be unable to return to this practice.

[14]TPIA provisions recognize that "when it comes to the public's right to public information, time is of the essence." *Paxton v. City of Dallas*, 509 S.W.3d 247, 282–83 (Tex. 2017) (Boyd, J., dissenting) (dissent joined by Johnson, J.) (identifying multiple PIA provisions requiring timely action, including Sections 552.221(d), 552.231, 552.275(e), 552.305(d), 552.3215(g), 552.3215(j), 552.301(b), 552.303(d), 552.306(a), and 552.324(b)). "In short, when it comes to the public's right to public information, the Act recognizes that access delayed is usually access denied." *Id.* at 283. "When 'fundamental' interests like those the Act protects are at stake, the loss of a protected right, '*for even minimal periods of time*, unquestionably constitutes irreparable injury.'" *Id.* at 284 (emphasis added) (quoting *Paulsen v. Cnty. of Nassau*, 925 F.2d 65, 68 (2d Cir. 1991)); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (addressing First Amendment rights).

*Sovereign Immunity—TPIA and Equitable Relief*

Importantly, Appellant's petition in the trial court seeking statutory relief, when reviewed as to its constitutional claims, does not seek money damages, rather it is a suit for equitable remedy. A plaintiff whose constitutional rights have been violated may sue the state for equitable relief. *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) (citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 144, 149 (Tex. 1995)).[15] Appellant's mandamus challenges the constitutionality of the trial court's order granting Appellee's plea to the jurisdiction and denying all relief sought by Appellant. As a Texas appellate court construing the constitutionality of a Texas district court order restricting the rights of Texas citizens, we apply Texas law and may look to well-reasoned and persuasive federal authority to inform our analysis of the right to gather news. *In re Hearst Newspapers*, 241 S.W.3d at 194 (citing *Davenport v. Garcia*, 834 S.W.2d 4, 20 (Tex. 1992)). The Fifth Circuit Court of Appeals discussing the relationship between freedom of the press and the right to gather news stated:

> The first amendment's broad shield for freedom of speech and of the press is not limited to the right to talk and to print. The value of these rights would be circumscribed were those who wish to disseminate information denied access to it, for freedom to speak is of little value if there is nothing to say. Therefore, the Supreme Court recognized in *Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626, 639 (1972), that news-gathering is entitled to first amendment protection, for "without some protection for seeking out the news, freedom of the press could be eviscerated."

*In re Express–News Corp.*, 695 F.2d 807, 808 (5th Cir. 1982).

---

[15]*See* TEX. CONST. art. I, §§ 8, 19. The right to gather news under the Texas constitution is coextensive with that right under the United States Constitution. *In re Hearst Newspapers*, 241 S.W.3d 190, 194 (Tex. App.—Houston [1st Dist.] 2007, orig. proceeding); *see Operation Rescue–Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546, 559 (Tex. 1998) ("It is possible that Article I, Section 8 may be more protective of speech in some instances than the First Amendment, but if it is, it must be because of the text, history, and purpose of the provision . . . .") (footnote omitted).

Appellant's mandamus action is not barred by sovereign immunity because it is not a suit for money damages. A petition for writ of mandamus claiming that a governmental entity is violating constitutional rights is not an action (1) "that is in essence one for the recovery of money from the State," (2) "to impose liability upon the State," or (3) "to compel the performance of its contract." *Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945). "Sovereign immunity protects the State from lawsuits for money damages." *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002).

Sovereign immunity does not bar a case seeking equitable remedy under the TPIA. *City of Houston v. Kallinen*, 516 S.W.3d 617, 625–26 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (no governmental employee/public information officer must be named as respondent; statute supports mandamus naming the governmental body as the respondent). "A mandamus suit seeking documents under the [T]PIA . . . is not a suit for money damages"; therefore, because the requested relief "is not a claim for money damages, it is not in the first instance barred by governmental immunity." *Id.* at 625. But even if, statutorily, Appellant's petition for a writ of mandamus was a square peg not fitting into the round hole of Section 552.321, the suit would not be barred by sovereign immunity. In my opinion, where an equitable remedy is pursued and *Houston Chronicle I*'s holding of a constitutional right to basic information, "immediately," is being "curtail[ed]," Sections 8 and 19 of Article I of the Texas Constitution[16] waive any sovereign immunity that could be asserted.[17]

---

[16]In addition to the First Amendment of the U.S. Constitution, see also the Bill of Rights in Article I of the Texas Constitution. Article I, Section 8 provides that "no law shall ever be passed curtailing the liberty of speech or of the press." *See also Kinney v. Barnes*, 443 S.W.3d 87, 90 (Tex. 2014) ("Enshrined in Texas law since 1836, this fundamental right recognizes the transcendent importance of such freedom to the search for truth . . . ." (footnote omitted) (internal quotation marks omitted)).

[17]Freedom of the press merits a "fundamental right" status protected by the Texas Constitution. *Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 113 (Tex. 2015) (Willett, J., concurring) (concurrence joined by Lehrmann, J., and Devine, J.) (discussion of "fundamental" rights). "Our Bill of Rights is not mere hortatory fluff; it is a purposeful check on government power." *Id.* at 121 (quoting *Robinson v. Crown Cork & Seal, Inc.*, 335 S.W.3d 126, 164 (Tex. 2010) (Willett, J., concurring)).

Sovereign immunity likewise does not bar Appellant's claims for attorneys' fees. *See Kallinen*, 516 S.W.3d at 624–26 (TPIA request for attorneys' fees is not barred by sovereign immunity). Furthermore, even if Appellant's claim for attorneys' fees was barred by sovereign immunity, its claims for prospective relief would not be. And even if the TPIA provided no remedy for a continuing pattern of delay in providing basic information to the public and press, the Texas Constitution and *Houston Chronicle I* provide an equitable remedy.

The appellate decisions relied upon by Appellee that deal with the issue of delay in the production of public information, finding mootness and/or lack of sovereign immunity to pursue the issue of delay:

(1) ignore the fact that public information suits are not suits for money and therefore sovereign immunity does not bar same;

(2) reflect no pattern of continued delay[18] or analysis of the governmental entity's "formidable burden of showing it is absolutely clear the allegedly wrongful behavior [delay] could not reasonably be expected to recur," *see Already, LLC*, 568 U.S. at 91; *Friends of the Earth, Inc.*, 528 U.S. at 190;

(3) do not include the separate constitutional issue of timely access to basic information as opposed to other public information; and/or

(4) do not address or recognize the promptness requirement of Section 552.321(a) or *Houston Chronicle I*.

---

[18]In *Nehls*, the court particularly noted that, contrary to *Click v. Tyra*, the newspaper offered no evidence that the sheriff's office had a policy or practice of routinely withholding discoverable public information such that it was a "recurring problem." 522 S.W.3d at 33. Appellant *has* provided such information here, and Appellee has taken the position that past practices will continue in the future. The *Click* court held that the "capable of repetition yet evading review" exception to the mootness doctrine applied because the complained-of act was a recurring practice of short duration without review before the issue became moot. 867 S.W.2d at 408–09.

17

*Putnam, Gates, and Carrollton*

Both *Gates* and *Putnam* are distinguishable from these facts. Neither involve a failure to provide "basic information" on a repetitive basis, nor do they implicate the constitutional rights that are recognized in *Houston Chronicle I*. *Gates* involved a parent making an isolated request seeking child-protective-services and adult-protective-services documents about her family. *See Gates v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-15-00631-CV, 2016 WL 3521888 (Tex. App.—Austin June 23, 2016, pet. denied) (mem. op.). There was no claim that the governmental entity holding those records demonstrated a continuing pattern of delay in producing records; thus, there was no claim that the entity acted contrary to the "promptness under the circumstances" statutory requirement or the established case law of *Houston Chronicle I*. Although the court in *Gates* summarily stated that "the substantive statutory relief is limited to the disclosure of information," it did so without a discussion or analysis harmonizing the "promptness under the circumstances" requirement of Section 552.221 in the TPIA. *See Gates*, 2016 WL 3521888, at *4. There was no discussion of whether the appellants therein even argued Section 552.221 as an affirmative defense to the claim of mootness once the documents had been provided. The legislative permission given to a "requestor" to file suit for a writ of mandamus compelling a governmental body to make information available for public inspection, not just someday but, rather, according to the terms of the statute, necessarily includes the right to have the courts by mandamus address a governmental entity's continued violation of all *timing* requirements set out therein—utilizing the required liberal construction to protect the right of the people and the press to public information. In support, *Gates* cited as authority *Thomas v. Cornyn*, but that case, in construing Section 552.321, touted *Houston Chronicle I*'s holding as to basic information in police reports and concluded: "Therefore, a ripe and justiciable controversy existed, and the Chronicle

18

was entitled to request mandamus relief." *Thomas v. Cornyn*, 71 S.W.3d 473, 482 (Tex. App.—Austin 2002, no pet.). Interestingly, *Putnam* did not discuss, analyze, or even mention *Houston Chronicle I* or its holdings.

While a requestor may also bring a written complaint to local authorities in an effort to obtain a declaratory judgment under the requirements of Section 552.3215, Appellant did not do so here. As a practical matter, a declaratory judgment under the TPIA is comparatively a procedurally cumbersome remedy requiring a written complaint to be filed with the district or county attorney requesting that *they* legally pursue the TPIA violation. If refused, among other procedural requirements that follow, the complaint must then go to the Texas Attorney General to decide whether it should be pursued by that office.[19]

A review of the opinion in *City of Carrollton* reveals that the suit stemmed from a succession of ten TPIA requests for police information made to the city over a four-month period by an individual citizen who had a history of filing hundreds of complaints with the city. 490 S.W.3d at 190 & n.5. For all of the citizen's requests, the city sought opinions from the Attorney General. *Id.* at 190–91. The city relied upon the law enforcement exception. *Id.* The Attorney General concluded that significant portions of what had been requested was indeed "basic information"

---

[19]Neither Section 552.3215 nor cases construing same are applicable here, including *Sefzik* which is factually and procedurally very different. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618 (Tex. 2011). Appellant framed its case in pursuit of a writ of mandamus under Section 552.321, not in a declaratory judgment action under Section 552.3215. A plain reading of the statute demonstrates that even if Appellant had filed a declaratory action, contrary to *Sefzik*, Section 552.321 includes no requirement to bring an ultra vires claim against an individual. Rather, by its express terms, the governmental body that violates this chapter is subject to a declaratory judgment and injunctive relief. Section 552.3215(b) is therefore a waiver of governmental immunity as to a governmental body.

subject to disclosure under Section 552.108(c).[20] *Id.* at 192. Importantly, mootness was *not* an issue decided.

*Mootness*

Ignoring Appellant's timeliness arguments regarding the "promptness" of production, Appellee argues that because it has provided the previously requested documents, all of Appellant's requests for relief, including its request for prospective relief, are moot. Appellant's claims for prospective relief are not moot based on three exceptions to the mootness doctrine. The exceptions outlined below are particularly important in this instance because this case implicates important constitutional considerations, and Appellee has offered no promise to change its policy. *See Lakey v. Taylor ex rel. Shearer*, 278 S.W.3d 6, 12 (Tex. App.—Austin 2008, no pet.) (voluntary cessation of the challenged conduct, without an admission or judicial determination regarding constitutionality of practice, is not sufficient to render the constitutional challenge moot).

---

[20]I respectfully disagree with the construction of Section 552.108(c) as discussed in *City of Carrollton v. Paxton*, 490 S.W.3d at 200–01, and any inference that, in the TPIA use of the term "basic information," the legislature may have narrowed *Houston Chronicle I*'s holding. The last nine words of subsection (c) ("about an arrested person, an arrest, or a crime") are a concise legal descriptor that takes the ordinary noun "information" modified by the adjective "basic" and identifies them as a legal phrase of art coined in *Houston Chronicle I.* Otherwise, subsection (c)'s select meaning might be lost within the statute's text. Read liberally, and in its historical context, the word "about" is not so limiting that an arrest must have been formally decided upon nor a crime committed and actually charged as a crime. Police actively investigating an act or omission as a potential crime is police activity "about" a crime. To interpret the statute otherwise allows gamesmanship in delaying release of information that *Houston Chronical I* held was required to be produced immediately. Criminal investigation is "about" crime, though no final decision has been made. If not protected under the law enforcement exception, or some other TPIA exception, it must be produced. This is exactly why the *Houston Chronicle I* opinion cites, and opinions of other appellate courts and the Texas Attorney General repeatedly list, the specific categories of police information included in "basic information." That lengthy list is precisely why a nine-word descriptor would be used instead in subsection (c). Further, *City of Carrollton* did not examine the constitutional right to basic information under *Houston Chronicle I*; it was only concerned with the statutory language of Section 552.108(c).

A. *Voluntary Cessation*

Under this doctrine, which has been described by the majority in some detail, dismissal of an action for prospective mandamus is not appropriate unless a defendant makes it "absolutely clear" that the challenged conduct could not be expected to recur. *Matthews*, 484 S.W.3d at 418. In *Matthews*, the Texas Supreme Court observed that, if a defendant's cessation of conduct deprived the court of jurisdiction, "defendants could control the jurisdiction of courts with protestations of repentance and reform, while remaining free to return to their old ways. This would obviously defeat the public interest in having the legality of the challenged conduct settled." *Id.* (internal citations omitted). The *Matthews* court emphasized that "the [school] District's voluntary abandonment . . . provides no assurance" that it would not resume the challenged conduct in the future. *Id.* at 420. To the contrary, it never expressed the position that it could not, and unconditionally would not, reinstate its previous policy and practice. *Id.* at 418–19. The court explained that "[t]he District's stance is a significant factor in the mootness analysis, and one which prevents its mootness argument from carrying much weight." *Id.* at 419.

As in *Matthews*, Appellee's argument that Appellant's raised complaints are moot under the voluntary cessation doctrine fails. Appellee having "voluntarily" turned over the requested information in the midst of the lawsuit should not control the jurisdiction of the court, particularly in light of the numerous requests with delayed responses in the record. Indeed, rather than expressing a strong desire to comply with the TPIA's promptness requirement, Appellee has steadfastly maintained—even through oral argument—that it has no intention of changing its

practices.[21]  Under these circumstances, Appellant and the public are entitled to "having the legality of the challenged conduct settled."  *Matthews*, 484 S.W.3d at 418.

### B. *The Review-Evasion and Public Interest Exceptions*

The Texas Supreme Court has recognized two other exceptions to the mootness doctrine: (1) the "capable of repetition" exception and (2) the "collateral consequences" exception.  *Houston Chronicle Pub. Co. v. Thomas*, 196 S.W.3d 396, 399 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (hereinafter *Houston Chronicle II*) (citing *F.D.I.C. v. Nueces Cnty.*, 886 S.W.2d 766, 767 (Tex. 1994)).  A "public interest" exception to mootness has also been previously raised but has yet to be recognized by the Texas Supreme Court.  *Id.* at 400.  The public interest exception "permits judicial review of questions of considerable public importance if the nature of the action makes it capable of repetition and yet prevents effective judicial review."  *Id.* at 400 (quoting *Nueces Cnty.*, 886 S.W.2d at 767).  The common element of the public interest exception and the capable of repetition exception "is that the complained of action be capable of repetition yet not effectively reviewable."  *Id.* (quoting *Nueces Cnty.*, 886 S.W.2d at 767).  This case falls under

---

[21]The court in *Matthews* stated:

> The District's stance is a significant factor in the mootness analysis, and one which prevents its mootness argument from carrying much weight.  *See Lakey*, 278 S.W.3d at 12 (finding plaintiffs' claims were not moot where defendant had not admitted unconstitutionality of challenged policy); *Bexar Metro. Water Dist.*, 234 S.W.3d at 131 (finding plaintiff's claims against water district were not moot where district had not admitted it was acting outside of its enabling act); *Del Valle Indep. Sch. Dist.*, 863 S.W.2d at 511 (finding challenge to at-large election scheme was not moot "[w]ithout a declaration by the court or an admission by [the defendant] that the at-large system was unconstitutional"); *see also Lubbock Prof'l Firefighters v. City of Lubbock*, 742 S.W.2d 413, 419 (Tex. App.—Amarillo 1987, writ ref'd n.r.e.) (finding plaintiffs' claims were not moot based on defendant's "vigorous trial and appellate opposition to the major claims advanced [by plaintiffs]," which indicated that the defendant had no intention of permanently discontinuing its challenged practices).

484 S.W.3d at 419.  The *Matthews* court also relied on *Texas Health Care Information Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841 (Tex. App.—Austin 2002, pet. denied).

the circumstances required by the first exception to the mootness doctrine, as well as those circumstances anticipated by the public interest exception.[22]

In addition to requiring that the act challenged must be of such a short duration that the appellant cannot obtain review before it becomes moot, there must also be a reasonable expectation that the same complaining party would be subjected to the same action again. *Click*, 867 S.W.2d at 408–09 (citing *Ex parte Nelson*, 815 S.W.2d 737, 739 (Tex. Crim. App. 1991)); *see Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). Dismissal is only appropriate when subsequent events make "absolutely clear that the [challenged conduct] could not reasonably be expected to recur." *Matthews*, 484 S.W.3d at 418 (alteration in original) (quoting *Bexar Metro. Water Dist. v. City of Bulverde*, 234 S.W.3d 126, 131 (Tex. App.—Austin 2007, no pet.), and *Friends of the Earth, Inc.*, 528 U.S. at 189). Persuading a court that the challenged conduct cannot reasonably be expected to recur is a "heavy" burden. *Matthews*, 484 S.W.3d at 418 (citing *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Appellee has not carried that heavy burden here.

The record leaves little doubt that future noncompliance should reasonably be expected. It shows a consistent pattern of delays in producing basic information—in violation of the rights of the public and the press. The recent opinion in *Putnam* is thorough in its review of Texas case law addressing mootness under the TPIA.

---

[22]Texas courts are split regarding the application of the public interest exception. *See, e.g.*, *In re Smith Cnty.*, 521 S.W.3d 447, 454 (Tex. App.—Tyler 2017, no pet.) (refusing to recognize the public interest exception); *Houston Chronicle II*, 196 S.W.3d at 400 (refusing to recognize the public interest exception); *Securtec, Inc. v. Cnty. of Gregg*, 106 S.W.3d 803, 810–11 (Tex. App.—Texarkana 2003, pet. denied) (recognizing the public interest exception); *Ngo v. Ngo*, 133 S.W.3d 688, 692 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.) (recognizing the public interest exception); *State Farm Mut. Auto. Ins. Co. v. Carmichael*, No. 05-96-00990-CV, 1998 WL 122409, at *1 n.3 (Tex. App.—Dallas March 20, 1998, no pet.) (not designated for publication) (refusing to recognize the public interest exception); *Univ. Interscholastic League v. Buchanan*, 848 S.W.2d 298, 304 (Tex. App.—Austin 1993, no pet.) (recognizing the public interest exception). Although it is clear that the application of the public interest exception is appropriate to these circumstances, even under the capable of repetition exception, the facts in this case are enough to avoid mootness.

However, because of the number of requests for basic information at issue, factually, this case is unlike any of those cited in *Putnam*. Appellant's petition for a writ of mandamus is also critically distinct. Appellant does not merely petition for a writ of mandamus to require delivery of documents, rather it supplies a record evidencing patterns of delay in Appellee providing basic information and asks that this court provide equitable relief and address Appellee's *continual* failure to promptly/immediately provide such information, so that it does not have to engage in *continual* litigation to obtain it.[23] Subsequent events do not make it "absolutely clear" that the challenged conduct could not reasonably be expected to recur. While Appellee once had a practice of providing basic information immediately, its behavior is now characterized by a lack of promptness, frequent delay, redacting of basic information, and regular requests for Attorney General opinions (with associated delay thereof).

Appellant has furnished this court with copies of recent Attorney General letter rulings confirming that Appellee's refusal to supply basic information pursuant to the TPIA is ongoing. *See, e.g.*, Tex. Att'y Gen. OR2022-35243; Tex. Att'y Gen. OR2022-34778; Tex. Att'y Gen. OR2022-34779. Appellant requests our judicial notice of same, and I see no reason why we could not do so.[24] In each of these letter rulings, the Office of the Attorney General advised the Odessa City Attorney's Office that it must share basic information requested by Appellant. Notwithstanding

---

[23]Appellant attached to its reply brief recent Texas Attorney General opinions—Appendix 1–5—demonstrating Appellee's continued delay in the release of basic information, and Appellant asks for judicial notice of same. This attachment includes an index of fifty-eight letter rulings from the Office of the Attorney General directing Appellee to release basic information between January and November of 2022, as well as a copy of four of those letter rulings: July13, 2022 Texas Attorney General OR2022-20034; July 20, 2022 Texas Attorney General OR2022-21191; August 1, 2022 Texas Attorney General OR2022-22447; October 12, 2022 Texas Attorney General OR2022-31309.

[24]In *Freedom Communications, Inc. v. Coronado*, the Texas Supreme Court took judicial notice of facts that arose in another case while the appeal was pending. 372 S.W.3d 621, 623–24 (Tex. 2012); *see* TEX. R. EVID. 201(b).

such repeated directives, Appellee made it clear during oral argument that it was justified in continuing its past patterns, stating that because it had ultimately provided all documents of past requests, the petition for mandamus was moot—and if Appellant wanted relief from a continuation of like delay, it should go to the legislature to change the TPIA statute.[25]  This record demonstrates a reasonable expectation that the same complaining party will be subjected to the same action again.  *See, e.g.*, *In re Fort Worth Star Telegram*, 441 S.W.3d 847, 852–53 (Tex. App.—Fort Worth 2014, no pet.) (order excluding media from courtroom, although moot, fell within the capable-of-repetition-yet-evading-review exception due in part to likelihood of repetition based on statement on record that judge was entitled to exclude media from voir dire).[26]

Exceptions to mootness—particularly as applied to TPIA controversies—are vaguely defined, superficially applied, and underdeveloped in the applicable case law.  Undoubtedly this is due, at least in part, to the preliminary stage of litigation (and discovery) in which pleas to the jurisdiction, applications for writs of mandamus, and accompanying debates regarding mootness arise.[27]  However, it is a rare circumstance, and in no other reported TPIA case is the pattern of delay in responding to the press's requests by a government entity greater.  The first prong of the mootness exception must be fact driven and may vary depending on the area of law and circumstances, which in this case reflect an extensive pattern in which

---

[25]In its January 13, 2022 plea to the jurisdiction, Appellee stated: "If [Appellant] wants to change 'promptly' to 'immediately' it should go to the Legislature."

[26]*See also Nehls*, 522 S.W.3d at 33; *Click*, 867 S.W.2d at 407–08 (regarding a governmental entity's practice of routinely withholding discoverable public information such that it was a "recurring problem").

[27]For example, Appellant's January 31, 2020 original petition for writ of mandamus was the first pleading filed in the matter.  This was at the inception of the COVID-19 pandemic in Texas.  Governor Abbott's first executive order was issued on March 13, 2020, four days after Appellee's original answer was filed.  *See First Emergency Order Regarding COVID-19 State of Disaster*, 596 S.W.3d 265 (Tex. 2020).  Appellee's plea to the jurisdiction was not heard until October 8, 2020.

basic information has not been provided "promptly" as the statute requires, or immediately as required by *Houston Chronicle I*, and in which such information is released before a trial court or an appellate court can rule.

In *Putnam*, where a single document request was at issue, mootness may have resulted once that document was provided. Here, there is a demonstrated pattern of delay over a long period of time, accompanied by an express intent to continue in the same pattern. Appellant sought a writ of mandamus from the trial court to enforce compliance with *Houston Chronicle I* and the legislature's TPIA promptness requirement for providing basic information. There is a live ongoing controversy with respect to the newspaper's legally cognizable interest in the outcome as a longstanding, for-profit news source to the citizens of Odessa and West Texas.

*Conclusion*

Based on this record, Appellee has not carried the "heavy burden" of showing that its subsequent actions made it "absolutely clear" that the challenged conduct could not reasonably be expected to recur. Even though Appellee has now provided all of the records of past requests, the case cannot be moot because the voluntary cessation and capable of repetition doctrines prohibit such a result.

There is preserved:

(1) the issue of continual violation of the TPIA requirement of promptness under the circumstances;

(2) the constitutional issue of a right to basic information immediately; and

(3) in the alternative, the exceptions to mootness pled and discussed herein.

The number of requests documented in the record, combined with Appellee's admission that it does not believe its previous actions were in violation of the law, indicates that we can expect that its past practices will continue and also provides

more than sufficient evidence that this same controversy will likely recur in the future. The legislative intent expressed within a harmonized reading of the provisions of the TPIA does not leave Appellant without an avenue of redress. There are constitutional rights of the press and of the public's right to information at issue as well, and those rights are not bound by statute. "We do not question the significance of free speech, press, or assembly to the country's welfare. Nor is it suggested that news gathering does not qualify for First Amendment protection; without some protection for seeking out the news, freedom of press could be eviscerated." *Houston Chronicle I*, 531 S.W.2d at 185–86 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)).

Because Appellant has *constitutional* rights to have requested basic information provided immediately, rights which were not even addressed by Appellee, as well as statutory rights thereto under the TPIA as intended by the legislature, I would grant relief to Appellant pursuant to the holding in *Houston Chronicle I* and order the prospective relief requested—(1) that Appellee must provide Appellant, as a requestor, basic information about an arrested person, an arrest, or a crime immediately and (2) that only under circumstances of compelling reason should providing responsive basic information be delayed. "Basic information" concerning a crime includes the offense committed, location of the crime, identification and description of the complainant, the premises involved, the time of the occurrence, property involved, vehicles involved, description of the weather, a detailed description of the offense in question, and the names of the investigating officers. *See id.* at 187.

Having determined that Section 552.321 waives governmental immunity for mandamus actions regarding promptness, and because a justiciable controversy exists, I would hold that the trial court erred in granting Appellee's plea to the jurisdiction and, in doing so, denying Appellant's petition for writ of mandamus.

27

Accordingly, I would reverse and render judgment that Appellant is entitled to mandamus relief against Appellee. I would also remand with regard to the issue of costs and attorney's fees. *See* GOV'T § 552.323; *Adkisson v. Paxton*, 459 S.W.3d 761, 779–81 (Tex. App.—Austin 2015, no pet.).

W. BRUCE WILLIAMS

JUSTICE

March 16, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.